***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS The parties stipulated into evidence the following: *Page 2 
1. Packet of medical records and reports consisting of seventy-two pages.
2. Packet of Concentra's nurse's reports.
3. Additional medical reports submitted February 14, 2006.
4. The Pre-Trial Agreement dated August 8, 2005, which was submitted to the Deputy Commissioner by the parties, is incorporated by reference.
 *********** EVIDENTIARY RULINGS
Any and all objections contained within the post hearing depositions taken in this matter are ruled upon in accordance with the applicable law and the findings in this decision.
 ***********
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who is forty-six years old and a high school graduate, began working for defendant-employer's predecessor, Sarah Lee Graphics, in 1990 and continued working at the printing press type facility after Americraft Cartons bought the facility in approximately 1997.He held different positions, including label printer, press helper, second pressman and press operator.
2. In 1992, plaintiff injured his left shoulder at work and underwent surgery on April 2, 1992, to repair a rotator cuff tear and to decompress the joint. He subsequently sustained another injury to his left shoulder at work, and underwent a second operation to his shoulder. Following both injuries, he was able to return to work in his regular job. However, he received a five percent permanent partial disability rating for each injury according to the Opinion and Award previously filed in this case. *Page 3 
3. On November 12, 2002 plaintiff sustained a compensable injury by accident arising out of and in the course of his employment when he tried to lift a large stack of paper without assistance and the paper became hung. The claim was initially denied because the drug test he underwent was positive for cocaine. However, by Opinion and Award filed November 19, 2003, the claim was found to be compensable. Compensation was awarded for ongoing temporary total disability.
4. Plaintiff was initially treated at Prime Care with medication and a sling until his claim was denied. Over a year later, after the initial Opinion and Award was filed, he began treatment with Dr. Gary Poehling, an orthopedic hand surgeon. Plaintiff initially treated with Dr. Poehling on January 12, 2004, and again on March 4, 2004.Following a left shoulder MRI and examinations, Dr. Poehling diagnosed plaintiff's medical condition as a severe chronic pain condition of his left upper extremity, resulting from plaintiff's November 12, 2002 accident. Dr. Poehling prescribed pain medication and no work.
5. On April 5, 2004 Dr. Poehling saw plaintiff again, with the rehabilitation nurse employed by defendants present. Dr. Poehling recommended plaintiff be treated at Piedmont Anesthesia in Winston-Salem for long-term chronic pain management. Dr. Poehling opined that once plaintiff's pain improved, then he should be a candidate for vocational rehabilitation.
6. Defendants did not arrange for treatment by a pain specialist. Instead, on May 10, 2004, plaintiff had a functional capacity evaluation (FCE) by physical therapist Susan Gunn, who reported that plaintiff demonstrated submaximal effort and symptom exaggeration with movement patterns which improved with distraction. Ms. Gunn wrote that plaintiff could perform work at the light exertional level. Thereafter, Dr. Poehling's physician assistant Frank Caruso recommended no more orthopedic treatment, but he also recommended plaintiff be referred to pain management for treatment for his pain. *Page 4 
7. In July 2004, defendants employed Concentra's Karen Taylor who met with plaintiff and began providing vocational rehabilitation services to try to help plaintiff find possible employment.
8. During the period of June 15, 2004 into October 2004 defendants would not approve plaintiff's return to Dr. Poehling or treatment by a pain specialist, so plaintiff sought pain treatment at the local emergency room.
9. On October 25, 2004, plaintiff returned to Dr. Poehling, who evaluated plaintiff and reviewed the FCE report. Dr. Poehling wrote, and the Commission finds as fact, that plaintiff has a chronic pain syndrome to his left shoulder. Dr. Poehling subsequently testified, and the Commission finds as fact, that Mr. Flippen failed to perform well in the FCE due to the nature of his pain condition and fear of increased pain for three or four days following trying to perform all the requested tasks. Dr. Poehling further testified that the FCE is only one tool he uses to evaluate what sustained work activities plaintiff might be able to perform. Given Dr. Poehling's testimony on this issue, the Full Commission gives little weight to Ms. Gunn's opinions, as expressed in the FCE report, concerning plaintiff's work capacity.
10. Dr. Poehling testified, and the Commission finds as fact, that plaintiff continues to suffer from a chronic severe pain syndrome which limits his ability to use his left upper extremity to perform any work activities, except as a gross assist only to his right upper extremity, and no overhead use of his left hand.
11. Plaintiff has continued to have very limited ability to use his dominant left upper extremity to perform sustained work activities, due to severe left upper extremity pain and weakness due to his accident. Plaintiff is able to use his left hand to perform simple activities of daily living for short periods of time. *Page 5 
12. During the period of July 2004 into at least August 2005, plaintiff participated in vocational rehabilitation efforts with Concentra's Karen Taylor and diligently tried to find employment available in the competitive employment market by applying for over 100 jobs without success. As part of his efforts to try to improve his employability, plaintiff completed the courses Internet Skills for JobSeekers and Computer Skills for Job Seekers at Surry Community College, as recommended by Ms. Taylor. Based on plaintiff's efforts, the Full Commission finds the defendants have failed to show that plaintiff has failed to comply with the vocational rehabilitation efforts provided him by defendants.
13. Defendants hired private investigators to follow plaintiff on about seven different dates during the period of December 2004 into March 2005.Defendants offered surveillance reports and videotapes to support their additional contention that plaintiff was employed or working at Spencer's Funeral Home in Mount Airy in 2004 and 2005.
14. The videotapes of February 4, 2005 showed plaintiff performing the following activities:(i) using his left hand to carry food and a drink; (ii) using his left hand to close an automobile door; (iii) walking at the rear of a wheeled stretcher at SFH, using primarily his right hand to guide the stretcher with a body on it down an incline, briefly using his left hand as an assist at the incline; (iv) driving a Chevrolet Suburban from SFH in Mount Airy to another funeral home in Winston-Salem and returning; and (v) using his right hand to check the oil and fill up the gas tank on the Suburban. The Full Commission finds that these activities are consistent with plaintiff's limited ability to use his left upper extremity as an assist to his right upper extremity.
15. Based upon a review of the record, the Full Commission finds that plaintiff was not employed by Spencer's Funeral Home. Patti Spencer, the owner of Spencer's Funeral Home was plaintiff's godmother, and a close family friend whom plaintiff often visited. For several years prior to plaintiff's accident in 2002 and thereafter, plaintiff ran errands for Patti Spencer, which included *Page 6 
fueling vehicles, and delivering flowers to a gravesite. Plaintiff was not paid for his services, did not expect to be paid, and volunteered his services to Patti Spencer because of a close family relationship.
16. On June 23, 2004 plaintiff's brother Kenneth Flippen died. Kenneth Flippen was ten years older than plaintiff and was like a father to plaintiff. Plaintiff agreed to pay Spencer's to handle his brother's funeral and related expenses. Spencer's agreed to allow plaintiff to make payments on the charges. During the period July 30, 2004 through February 25, 2005 plaintiff paid Spencer's a total of $2,314.50 for his brother's funeral. The Full Commission finds that these payments were not payments from Spencer's to plaintiff, as alleged by defendants.
17. In August or September 2004, plaintiff began to visit Spencer's two to three days per week to use the internet-connected computer and fax to perform job search activities, as requested by the vocational specialist. In about late November 2004, Patti Spencer became bedridden due to cancer, and her son Eddie Spencer helped operate the funeral home's business.
18. During the fall of 2004, plaintiff had two children in college, and confided his financial difficulties to Patti and Eddie Spencer. Plaintiff continued, as before, to perform what voluntary services or errands he could for Spencer's, but did not expect pay for these errands. During the period September 30, 2004 through April 18, 2005 Patti Spencer or Eddie Spencer signed Spencer's checks made payable to plaintiff totaling about $2,475, and to plaintiff's son Steve Flippen, Jr. totaling about $1,400.The plaintiff asserts that the various payments totaling $3,875 paid by Spencer's to plaintiff and his son were gifts based on plaintiff's need for financial assistance. Plaintiff's activities at Spencer's during this time were similar to the activities he had performed at Spencer's in prior years, all without pay and on a voluntary basis. In finding that these payments were made by the Spencers to the plaintiff in a period of just a few months, when plaintiff continued to volunteer his services before and after such payments were made, the Full Commission finds the *Page 7 
plaintiff's testimony to be credible, and finds that these payments were indeed gifts. However, even if such payments could be construed as wages and not gifts, there is insufficient evidence of record upon which to find that the work plaintiff performed at Spencer's and the wages plaintiff "earned" there are indicative of work and wages available in the competitive market. Thus, the Full Commission finds that the payments made to plaintiff by the Spencers are not an indication of plaintiff's earning capacity.
19. During the period of November 2004 through February 2005, plaintiff was treated primarily by his family physician for his left upper extremity pain condition.
20. From March 2005 through January 5, 2006, plaintiff has been under the care of Winston-Salem pain specialist and anesthesiologist Richard L. Rauck, who saw plaintiff on approximately eight occasions. Dr. Rauck tried various pain medications, Lidoderm patches, and a steroid injection in efforts to try to improve plaintiff's pain condition. Dr. Rauck also prescribed Cymbalta to treat plaintiff's resulting depression. Plaintiff's left upper extremity pain syndrome improved some over time with medication, but he continues to have a chronic pain syndrome of his left upper extremity, characterized by constant severe pain, lack of endurance, and the inability to use his left upper extremity to perform work activities, except as a gross assist to his right upper extremity.
21. In December 2005 and January 2006, Dr. Rauck recommended that plaintiff undergo a trial dorsal column stimulator to try to improve plaintiff's chronic left upper extremity pain condition. Based on the testimony of Dr. Rauck, the Full Commission finds that plaintiff would benefit from the trial dorsal column stimulator, as it would tend to effectuate a cure, give relief or lessen plaintiff's disability. Further, Dr. Rauck is approved to continue as plaintiff's primary treating pain specialist, and Dr. Poehling is approved to continue as his treating orthopedic surgeon. *Page 8 
22. Defendants have failed to show that plaintiff's total disability has ended. Plaintiff's testimony concerning his severe ongoing chronic pain condition in his left upper extremity and his very limited ability to use his left upper extremity is found to be credible and supported by the medical evidence of record, including the testimony of his treating physicians. Plaintiff has continued to make diligent, but unsuccessful, efforts at trying to find possible employment. Further, plaintiff has not earned any wages or had any self-employment income during his period of disability. Thus, the Full Commission finds it proper to order defendants to reinstate plaintiff's temporary total disability compensation.
23. As previously found by prior Opinion and Award in this matter, plaintiff's average weekly wage is about $940.24, which yields a compensation rate of $626.86.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Disability under the Workers' Compensation Act specifically relates to incapacity to earn wages. Fleming v. K-Mart Corp., 67 N.C. App. 669,313 S.E.2d 890 (1984).Plaintiff has shown that he continues to be incapable of earning wages by virtue of his compensable injury.Id.
2. Plaintiff is entitled to the reinstatement of temporary total disability compensation, retroactive to the date defendants stopped paying such benefits, at the weekly rate of $626.86, which shall continue until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to ongoing medical treatment reasonably necessary to effect a cure or give relief for plaintiff's left upper extremity and chronic pain syndrome, including treatment by pain specialist Dr. Rauck and by orthopedist Dr. Poehling. N.C. Gen. Stat. §§ 97-2(19) and 97-25. *Page 9 
4. Plaintiff is entitled to have defendants provide the spinal cord stimulator trial offered by Dr. Rauck, as it would tend to effect a cure or give relief for plaintiff's left upper extremity and chronic pain syndrome. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall reinstate plaintiff's temporary total disability compensation, retroactive to the date defendants stopped paying such benefits, at the weekly rate of $626.86, and such compensation shall continue until further order of the Commission, subject to the attorney's fee provided herein. Compensation that has accrued shall be paid to plaintiff in a lump sum.
2. Defendants shall provide ongoing medical treatment to plaintiff that is reasonably necessary to effect a cure or give relief for plaintiff's left upper extremity and chronic pain syndrome, including treatment by pain specialist Dr. Rauck and by orthopedist Dr. Poehling.
3. Defendants shall provide for the spinal cord stimulator trial offered by Dr. Rauck.
4. Defendants shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five (25%) of the compensation awarded herein. Fees based upon compensation that has accrued shall be paid to plaintiff's counsel in a lump sum; thereafter, defendants shall pay to plaintiff's counsel every fourth check of compensation due plaintiff.
5. Defendants shall pay the costs.
This 29th day of January 2007.
 ___________________ CHRISTOPHER SCOTT *Page 10 
COMMISSIONER
CONCURRING:
 ____________________ BERNADINE S. BALLANCE COMMISSIONER
 ____________________ THOMAS J. BOLCH COMMISSIONER *Page 1